IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHELTON SHERROD MARZETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-02498-SHM |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Shelton Sherrod Marzette brings this action against Defendant The Lincoln National Life Insurance Company ("Lincoln National"), challenging the denial of insurance benefits.

Before the Court is Lincoln National's Motion for Judgment on the Administrative Record, dated March 27, 2017. (ECF No. 27; cf. ECF No. 27-1.) Marzette responded on April 19, 2017. (ECF No. 28.) Lincoln National replied on April 25, 2017. (ECF No. 29.)

For the reasons below, the Motion for Judgment on the Administrative Record is GRANTED.

## I. Background

Plaintiff was employed by Pat Salmon and Sons, Inc. ("Salmon") as a tractor trailer truck driver. (ECF No. 22-6 at

869.)[1]   Plaintiff participated in a group voluntary accidental death and dismemberment insurance plan ("Plan") available to Salmon employees.  (ECF No. 22-2 at 58-60.)  Defendant provided the Plan benefits.

Under the Plan, insured persons like Plaintiff are entitled to benefits if they "sustain[ed] a covered accidental bodily injury while insured" that caused, among other things, a "Loss of Hearing in One Ear."  (Id. at 84.)  The Plan defines loss of hearing as "permanent and total deafness in [one] ear" that "cannot be corrected to any functional degree by any aid or device."  (Id. at 85.)  The loss of hearing "must result directly from the injury and from no other causes."  (Id. at 84.)

Defendant has the authority to "manage this Policy and administer claims under it" and to "interpret the provisions and resolve questions arising under this Policy."  (Id. at 100.)  Defendant's decisions are "conclusive and binding," subject to the insured person's right to sue.  (Id.)

Plaintiff represents that, on July 31, 2014, while driving to Denver, Colorado for Salmon, he became dizzy and began experiencing pain in his left ear.  (ECF No. 22-6 at 870.)  On August 1, 2014, Plaintiff visited the Emergency Department at the

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

Veterans Administration Hospital to consult a doctor about his condition. (Id. at 819.) Hospital records from that visit show that Plaintiff said he had felt "dizzy since [July 31] when he woke up and thought it would go away." (Id. at 818.) Plaintiff also told doctors that his left ear was stopped-up. (Id.) Plaintiff was diagnosed with vertigo, given a prescription, and discharged from the hospital. (Id.)

Plaintiff returned to the doctor on August 3, 2014, and complained that he felt dizzy and that his left ear was stopped-up. (Id. at 813-14.) Plaintiff was again diagnosed with verti-go and discharged. (Id. at 811.)

Plaintiff returned to the doctor on August 5, 2014, and complained that his vertigo continued. (Id. at 807.) Plaintiff told doctors that a virus might be causing his condition. (Id.) Plaintiff was given a work excuse and discharged. (Id.)

On August 7, 2014, Plaintiff went to the doctor for an au-diology consultation. (Id. at 804.) Plaintiff complained of "sudden left ear hearing loss and dizziness (nausea, vomiting, unsteadiness, 'drunk feeling') which first started last week." (Id. at 803.) Plaintiff was given an audiology exam, which re-vealed some hearing loss in the left ear. (Id. at 806.) The hearing loss was described as "a precipitous high-frequency def-icit at 4khz to 8khz." (Id.) The exam revealed that Plaintiff had "[n]ormal hearing through speech frequencies." (Id.)

Plaintiff was told to return in a week for another exam and reevaluation. (Id.)

Plaintiff returned to the doctor on August 14, 2014. (Id. at 802.) Plaintiff reported that "his vertigo/imbalance seems to have improved some," but complained of hearing loss in his left ear. (Id. at 800.)

On September 22, 2014, Plaintiff received another hearing evaluation. (Id. at 793.) The evaluation "revealed normal hearing sensitivity" and "excellent" speech recognition for both ears. (Id.) Plaintiff asked the doctor for hearing aids, but the doctor said that hearing aids were "not warranted at this time since there is normal hearing sensitivity through the frequency range that hearing aids reach." (Id.)

Plaintiff had another hearing evaluation on October 17, 2014. (Id. at 787.) Notes from this evaluation show that Plaintiff reported moderate to severe dizziness, but that "[s]ubjective findings are not consistent with functional assessment." (Id.) The notes also state that Plaintiff "had normal [lower extremity] strength" and "demonstrated normal dynamic balance" "[without] ambulatory aid." (Id.)

On October 22, 2014, Plaintiff had a kinesiotherapy consultation. (Id. at 784.) Notes from the consultation show that Plaintiff was "ambulatory [without] an assistive device and demonstrate[d] good static and dynamic balance in spite of sub-

jective [complaints of] [moderate to severe] dizziness." (Id. at 784.) The doctor concluded that Plaintiff "is safe to ambu- late [without] an assistive device and has no findings that sug- gest Vestibular Rehab is warranted. Findings revealed that subjective [complaints of] vertigo/dizziness are not consistent with classical findings of functional assessment." (Id.)

On January 8, 2015, Plaintiff underwent a neurology evalua- tion. (Id. at 750.) The notes from that evaluation state that, although Plaintiff "had severe sensory-neural hearing loss on the left [ear] for higher frequencies 4000 - 8000," that "did not affect his ability to hear human conversation and did not qualify him for a hearing aid." (Id.) The notes also state that "[t]he left hearing loss . . . could have arisen from ei- ther a left labyrinthitis or a left AICA ischemic stroke." (Id.) The doctor believed that, based on Plaintiff's medical history, a "small AICA ischemic stroke may have occurred but there was no confirmation of this on MRI." (Id. at 751.)

On November 13, 2014, Plaintiff submitted a claim to De- fendant for benefits under the Plan. (Id. at 674.) As part of his claim, Plaintiff submitted an Attending Physician Statement ("September 4 Statement"), dated September 26, 2014. (Id. at 676-77.) The September 4 Statement, signed by Dr. Joseph S. Mook, M.D., diagnosed Plaintiff with "peripheral vertigo second- ary to viral labrynthis" and "HEARING LOSS TO LEFT EAR." (Id.

at 677.) "HEARING LOSS TO LEFT EAR" appears darker than the other text in the Statement and is written in capital letters. "[P]eripheral vertigo secondary to viral labrynthis" is written in lower case letters. (Id.) The Statement classifies Plaintiff's physical impairment as Class 5, meaning "[s]evere limitation of functional capacity, incapable of minimum," and classifies Plaintiff's mental impairment as Class 2, meaning "[p]atient is able to function in most stress situation & engage in most interpersonal relations." (Id.)

Plaintiff also submitted a Statement from Dr. Joanna Franz-Stepniakowska, dated November 6, 2014 ("November 6 Statement"). (Id. at 667-68.) The November 6 Statement diagnosed Plaintiff with vertigo and hearing loss. (Id. at 667.) Like the September 4 Statement, "HEARING LOSS" is written in all capital letters and appears significantly darker than "vertigo." The November 6 Statement also states that "VERY HIGH ALTITUDE IN DENVER, CO. CAUSE HEARING TO BE BLOWN OUT." (Id. at 668.) That text is significantly darker than the other text in the November 6 Statement and is written in all capital letters.

In a letter dated June 16, 2015, Defendant notified Plaintiff's counsel that Plaintiff was not entitled to benefits under the Plan. (ECF No. 22-5 at 497-99.) Defendant justified its decision by explaining that "Plaintiff did not lose his hearing due to an accident" and "the hearing loss that occurred was not

permanent and did not result in total deafness." (<u>Id.</u> at 498.)
Thus, Plaintiff was not entitled to benefits under the Plan.
(<u>Id.</u>)

On August 27, 2015, Plaintiff, through his attorney, filed
a first level appeal in accordance with Plan procedures. (<u>Id.</u>
at 487-94.) Defendant asked Dr. Alden J. Pearl to perform an
independent review of Plaintiff's medical records and claims.
(<u>Id.</u> at 465.) Dr. Pearl concluded that, "[b]ased on the sup-
plied medical record," Plaintiff "likely experienced a sudden
sensorineural hearing loss (SSNHL) of the left ear." (<u>Id.</u> at
467.) The medical record "did not reveal any definitive cause
or etiology for [Plaintiff's] sudden hearing loss." (<u>Id.</u>) Dr.
Pearl noted that "[t]he most popular theory for SSNHL when no
obvious cause is identified (such as in this case) include[s]
viral and circulatory origins with smoking often considered as a
contributing factor," and added that Plaintiff "was evaluated
and treated for a cough on July 14, 2014[,] approximately 2
weeks prior to his SSNHL, and that he was a tobacco user."
(<u>Id.</u>) Dr. Pearl also stated that Plaintiff had "a moderate to
severe sensorineural hearing loss (SNHL) from 4000 to 8000 Hz"
in his left ear. (<u>Id.</u> at 468.) "Since the hearing loss is iso-
lated to the left ear and only involves the high frequencies (4-
8 kHz), it cannot be defined as a total deafness." (<u>Id.</u>)

In a letter dated October 9, 2015, Defendant informed Plaintiff's counsel that, after reviewing Plaintiff's first level appeal, Defendant would not approve benefits under the Plan. (Id. at 457-60.) Defendant's letter reiterated that Plaintiff was not entitled to benefits because there was no evidence to suggest that Plaintiff's disability resulted from an accident, and no evidence that Plaintiff's hearing loss was total and permanent. (Id. at 459.)

Plaintiff's counsel submitted a second level appeal on behalf of Plaintiff on November 11, 2015. (Id. at 447-49.) Plaintiff argued that, "[b]ecause SS[N]HL is idiopathic in nature, any attempt to assign a causative origin would necessarily be 'pure speculation.'" (Id. at 447 (emphasis removed).) Plaintiff also argued that Plaintiff's hearing loss was total and permanent because "15% of people who experience SS[n]HL [do] not recover." (Id. at 448 (emphasis removed).)

In a letter dated December 7, 2015, Defendant notified Plaintiff, through his attorney, that it remained unable to approve Plaintiff's request for benefits. (Id. at 438.)

On June 23, 2016, Plaintiff filed his *pro se* Complaint. (ECF No. 1.) The Complaint alleges bad faith and breach of contract. (Id. at 2.) On December 5, 2016, United States District Judge James D. Todd entered an Order reassigning the case to this Court. (ECF No. 25.)

On March 27, 2017, Defendant filed a Motion for Judgment on the Administrative Record.  (ECF No. 27; cf. ECF No. 27-1.)  Plaintiff responded on April 19, 2017.  (ECF No. 28.)  Defendant replied on April 25, 2017.  (ECF No. 29.)

## II.  Standard of Review

A district court reviewing a decision about benefits under ERISA shall "conduct a . . . review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly."  Wilkins v. Baptist Healthcare Systems, Inc., 150 F.3d 609, 619 (6th Cir. 1998).  A denial of benefits is subject to the arbitrary and capricious standard of review if the benefit plan accords discretionary authority to the claims administrator to "determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000) (internal quotations omitted).

In applying the arbitrary and capricious standard, a court will weigh as a factor whether a conflict of interest existed on the part of the decision-maker in determining whether there was an abuse of discretion.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008); Bennett v. Kemper Nat'l Servs., Inc.,

514 F.3d 547, 552-53 (6th Cir. 2008). However, "mere allega-
tions of the existence of a structural conflict of interest are
not enough to show that the denial of a claim was arbitrary."
Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir.
1998). A plaintiff is required "not only to show the purported
existence of a conflict of interest, but also to provide 'sig-
nificant evidence' that the conflict actually affected or moti-
vated the decision at issue." Cooper v. Life ins. Co. of N.
Am., 486 F.3d 157, 165 (6th Cir. 2007) (quoting Peruzzi, 137
F.3d at 433).

### III. Analysis

The Plan vests Defendant with discretion to make benefit
determinations. (ECF No. 22-2 at 100.) The Court, therefore,
reviews Defendant's denial of benefits under the arbitrary and
capricious standard.

Plaintiff argues that Defendant's decision to deny benefits
was arbitrary and capricious because Plaintiff's hearing loss
was the result of an accident and because the hearing loss is
permanent and cannot be corrected. (ECF No. 28 at 915-23.)

In finding that Plaintiff's hearing loss did not constitute
permanent and total deafness, Defendant relied on evidence from
Plaintiff's visits to several doctors. Plaintiff sought treat-
ment for his condition on: (1) August 1, 2014; (2) August 3,
2014; (3) August 5, 2014; (4) August 7, 2014; (5) August 14,

2014; (6) September 22, 2014; (7) October 22, 2014; and (7) January 8, 2015. See supra at 2-5. None of the doctors concluded that Plaintiff suffered permanent and total hearing loss. Instead, their notes reveal that Plaintiff's "[s]peech recognition score was excellent for both ears," that Plaintiff was "ambulatory [without] an assistive device and demonstre[d] good static and dynamic balance," and that Plaintiff's condition "did not affect his ability to hear human conversation and did not qualify him for a hearing aid." (ECF No. 22-6 at 793; Id. at 784; Id. at 750.)

Plaintiff argues that "[an] administrator also has a duty to perform his own medical evaluation . . . to bolster the denial of benefits." (ECF No. 28 at 920.) Defendant did that. Defendant hired Dr. Pearl to perform an independent evaluation after Plaintiff's first level appeal. (ECF No. 22-5 at 465.) Dr. Pearl also concluded that Plaintiff's "hearing loss is isolated to the left ear and only involves the high frequencies." (Id. at 467.)

This evidence offers "a reasoned explanation" for Defendant's decision to deny Plaintiff benefits under the Plan. Williams, 227 F.3d at 712; see also Whitaker v. Hartford Life and Acc. Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005) ("The administrator's decision must be upheld if 'it is the result of a deliberate, principled reasoning process and if it is supported by

substantial evidence.'" (internal quotations omitted)). The overwhelming majority of physicians who examined Plaintiff concluded that the hearing loss in his left ear was not complete. The hearing loss Plaintiff sustained does not affect his ability to hear everyday conversation, and thus does not constitute total deafness.

The only contrary evidence is the two Statements Plaintiff submitted with his claim for benefits. (ECF No. 22-6 at 676-77; Id. at 667-78.) Both diagnose Plaintiff with hearing loss. (Id.) Neither Statement, however, explains why Plaintiff's condition constitutes permanent and total deafness. Indeed, both Statements answer "Yes" to the question of whether "a fundamental or marked change in the future" could be expected. (Id. at 676; Id. at 667.) Thus, the physicians did not believe that Plaintiff's hearing loss was permanent. Neither Statement describes Plaintiff's hearing loss as total or complete. The portion of each Statement that mentions hearing loss appears darker and in a different font from the rest of the Statement. It was reasonable for Defendant to conclude, based on the totality of the evidence, that Plaintiff's hearing loss was not total and permanent.

The Court need not reach the question of whether it was reasonable for Defendant to conclude that Plaintiff's hearing loss was caused by an accident. Under the terms of the Plan,

Defendant can deny benefits if Plaintiff's hearing loss was not total and complete. Defendant's denial of benefits was neither arbitrary nor capricious.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion for Judgment on the Administrative Record is GRANTED.

So ordered this 29th day of November, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE